Sheehan & Associates, P.C.
Spencer Sheehan
spencer@spencersheehan.com
(516) 303-0552

United States District Court
Eastern District of New York                                                1:19-cv-02249

| | |
|---|---|
| Charles Harris individually and on behalf of all others similarly situated<br><br>                    Plaintiff<br><br>             - against -<br><br>Mondelēz Global LLC<br><br>                    Defendant | Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Mondelēz Global LLC ("defendant") manufactures, processes, distributes, markets, labels and sells chocolate sandwich cookies with crème filling known as Oreos (the "Products").

2. The Product varieties include original, thin, dark chocolate, mint, peanut butter, "mega stuf" (extra filling), reduced fat and seasonal and holiday flavors (i.e., "Winter," "Halloween"), among others.

3. The Products are available in various packaging formats such as packs of 2, cases, standard size (14.3 oz or 405g) and family size.

4. The front labels proclaim "Milk's Favorite Cookie," "Oreo," "Chocolate Sandwich Cookies," an Oreo splashed by fresh milk and "Always Made With Real Cocoa."



5.      The Product line contains substantially similar relevant representations, modified only by the specific flavor and type ("thins," "pistachio").




6.      All of the Products highlight certain ingredients or components on the front labels through the statement "Always Made With Real Cocoa."

2



7. According to a trade publication, "[M]ore consumers are looking for authenticity and 'real' ingredients in their foods, including sweet ingredients like real sugar" and cocoa.[1]

8. And survey data compiled by the International Dairy-Deli-Bakery Association (IDDBA) shows a growing "number of Americans continue to avoid products made with processed or artificial ingredients."

9. Approximately two-thirds of consumers "noted that health, nutrition and making better choices are factors in their purchasing decisions on indulgent items or desserts," and "[H]alf of shoppers look for 'real' ingredients."[2]

10. Another recent study found "nearly three-quarters of U.S. consumers find it important to recognize the ingredients in the products they buy,"[3] confirming that "recognition of ingredients to be one of the biggest drivers of product choice, with more than half of respondents

---

[1] Beth Day, Indulgence driving innovation in baked foods, November 3, 2016 FoodBusinessNews.net, https://www.foodbusinessnews.net/articles/7110-indulgence-driving-innovation-in-baked-foods
[2] Progressive Grocer, Bakery Connects Emotionally With Consumers, Drives Grocery Sales, April 8, 2019, https://progressivegrocer.com/bakery-connects-emotionally-consumers-drives-grocery-sales
[3] https://www.snackandbakery.com/articles/88762-clean-label-snacks-and-bakery-move-from-novelty-to-mainstream

3

(52 percent) considering it to be an important factor."[4]

11. This is not to say a "reasonable consumer" expects confections and sweets to be healthy or nutrient-rich – they are by definition an indulgence and not consumed for their salutary effects in the same way other foods might be.

12. But consumers expect and seek out those indulgent foods that let them enjoy a "guilty pleasure" while taking comfort in other attributes of those products.[5]

13. Defendant has tapped into this consumer demand for "real ingredients" by promoting the products as "always made with real cocoa."

14. The Products' representations are misleading because despite the front-label claims of "real cocoa," they do not contain this component in the amount, type and/or form which a reasonable consumer would expect based on the claims.

15. The "Always Made with Real Cocoa" representation is false, misleading and deceptive because the ingredient list discloses they contain "Cocoa (Processed with Alkali)."

---

[4] https://www.foodinsiderjournal.com/clean-label/75-consumers-will-pay-extra-clean-label-ingredients
[5] Monica Watrous, The new pleasure paradigm, Food Business News, Oct. 4, 2017, https://www.foodbusinessnews.net/articles/10688-the-new-pleasure-paradigm ("To tap into today's pleasure principles, it is critical to move beyond the temporary "high" often associated with pleasure and focus on real ingredients").





Ingredients: Unbleached Enriched Flour (Wheat Flour, Niacin, Reduced Iron, Thiamine Mononitrate {Vitamin B1}, Riboflavin {Vitamin B2}, Folic Acid), Sugar, Palm and/or Canola Oil, Cocoa (Processed with Alkali), High Fructose Corn Syrup, Leavening (Baking Soda and/or Calcium Phosphate), Salt, Soy Lecithin, Chocolate, Artificial Flavor.

16. Cocoa powder ("cocoa") is the "core of a chocolate's flavor, without any extra fat, sugar, or milk to get in the way."

17. Cocoa powder results from crushing the edible portions of the cocoa bean – "nibs" – into a fine paste, releasing and melting the nibs' fat content (cocoa butter).

18. The combination of crushed, ground nibs and cocoa butter produces chocolate liquor.

19. The chocolate liquor is pressed between hydraulic plates to form hard-cocoa "press cakes" and the excess cocoa butter is removed.

20. The cocoa cakes are grated into fine powders.

21. The types of powders produced are based on the amount of cocoa butter, or fat, remaining in the powder: high or "breakfast cocoa" (22% +), medium or "cocoa" (10-12%) and lowfat cocoa (less than 10%).

5

22. The cocoa powder can be further treated through alkalization ("Dutch-process" or alkalized) or used in its non-alkalized state.

23. The use and presence of alkalis reduces the acidity of cocoa powder, giving it a noticeably darker hue associated with the Products but detracting from the "real cocoa" taste.



Non-Alkalized        Alkalized

24. The claim of "always made real cocoa" is intended to differentiate the cocoa in the Products from other cocoa ingredients bearing the standard cocoa designation, i.e., "cocoa" or "cocoa processed with alkali," and implies the cocoa present in the Products is nutritionally and organoleptically superior.[6]

25. Because cocoa is a commonly used and valued product, consumers have certain expectations based on experience when it comes to how "cocoa" is declared on a label.

26. No reasonable consumer would expect the cocoa in the Products to have been made with and contain alkalis because "real," in modifying the word "cocoa," represents the cocoa powder is included in its most simplified form.

27. According to Nielsen market research, a majority of consumers "say that when it comes to ingredient trends, a back-to-basics mind-set, focused on simple ingredients and fewer

---

[6] 21 C.F.R. §130.11   Label designations of ingredients for standardized foods.

6

artificial or processed foods, is a priority."[7]

28. It is false, deceptive and misleading to conspicuously promote "real cocoa" without any reference to the presence and use of alkalis either preceding or following because "real cocoa" without any modifying terms implies the absence of artificial ingredients in the cocoa.

29. The Products' use of the optional alkali ingredients significantly distinguishes its cocoa component from cocoa powder which does not contain alkali.

30. The presence or absence of alkalis effect the taste and color of the cocoa powder to such an extent that they are a characterizing feature and effect whether a product that promotes the presence of cocoa will be purchased.

31. Though it may be duplicative and unnecessary to indicate the presence of all optional ingredients used in standardized foods wherever the affected ingredient is declared, other than the ingredient list, this is not the case where an optional ingredient (alkali) is characterizing towards the affected ingredient (cocoa).

32. The representation "real cocoa" is false, deceptive and misleading because consumers expect "real cocoa" to indicate a higher quality cocoa than had the ingredient merely been accurately identified as "cocoa," (minus the descriptor "real"), the term for cocoa between 10 and 22 percent fat.

33. By misrepresenting medium fat cocoa as "real cocoa," consumers will expect the cocoa powder component to be nutritionally and organoleptically superior than it actually is.

34. Such a type of higher fat cocoa – above 22 percent – is referred to as breakfast cocoa,

---

[7] Reaching for Real Ingredients: Avoiding the Artificial, Nielsen, CPG, FMCG & Retail, Sept. 6, 2016 https://www.nielsen.com/us/en/insights/news/2016/reaching-for-real-ingredients-avoiding-the-artificial.html

which has a more intense "chocolate-y" flavor.

35. The emphasis on "milk" – "milk's favorite cookie" – reinforces the expectation that the cocoa contained in the Products will not contain nor be processed with artificial, non-cocoa ingredients, because reasonable consumers are familiar with milk being perhaps nature's simplest and original food, unprocessed and pure.

36. The Products contain other representations which are misleading and deceptive.

37. As a result of the false and misleading labeling, defendant sold the Products at a premium price – no less than $4.99 per 14.1 oz, excluding tax – compared to other similar products which are represented in a non-misleading way.

## Jurisdiction and Venue

38. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

39. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

40. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

41. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

42. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

43. Plaintiff is a citizen of Kings County, New York.

44. John and Jane Doe plaintiffs are citizens of the other 49 states.

45. Defendant is a Delaware limited liability company with co-principal places of business in Deerfield, Illinois and East Hanover, New Jersey and upon information and belief, no member is a citizen of New York.

46. During the class period, plaintiffs purchased one or more Products for personal consumption with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

47. Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

48. Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

## Class Allegations

49. The classes consist of all consumers in the following states: all, New York who purchased any Products subject to the actionable representations during the statutes of limitation.

50. A class action is superior to other methods for fair and efficient adjudication.

51. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

52. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

53. Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

54. Plaintiff(s) is/are an adequate representative because his/her/their interests do not

9

conflict with other members.

55.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

56.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

57.   Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

58.   Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
and Consumer Protection Statutes of Other States and Territories

59.   Plaintiff and John and Jane Doe plaintiffs, representing the 49 other states where they reside and purchased the Products, incorporate by reference all preceding paragraphs and assert causes of action under the consumer protection statutes of all 50 states.

a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d. California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et. seq.*;

j. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u. Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska

Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

dd. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ee. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

ff. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

gg. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

hh. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

ii. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

jj. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

kk. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

ll. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

60. Defendant's representations and omissions are false, unfair, deceptive and misleading and are not unique to the parties and have a broader impact on the public.

61. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

62. Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

63. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

## Negligent Misrepresentation

64. Plaintiff incorporates by references all preceding paragraphs.

65. Defendant misrepresented the substantive, health, quality and nutritional attributes of the Products' composition.

66. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

67. This duty is based on defendant's position as an entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

68. Defendant negligently misrepresented and/or negligently omitted material facts.

69. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

70. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

## Breach of Express Warranty and Implied Warranty of Merchantability

71. Plaintiff incorporates by references all preceding paragraphs.

72. Defendant manufactures and sells products which contain almonds.

73. The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, compositional, organoleptic, sensory, physical and other attributes which they did not.

74. Plaintiff desired to purchase products which were as described by defendant – made with cocoa in its most basic form.

75. Defendant sells cookies with "real cocoa" ingredients, purporting to be the ingredient type in its most basic form available such that it can be functionally included in the Products.

76. Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

77. This duty is based, in part, on defendant's position as one of the largest users of cocoa in the world.

78. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

79. The Products were not merchantable in their final sale form.

80. Plaintiff and class members relied on defendant's claims, paying more than they would have.

### Fraud

81. Plaintiff incorporates by references all preceding paragraphs.

82. Defendant's purpose was to mislead consumers who seek products which feature "real" ingredients – "real" referring to the ingredient in its least modified form such that it can be

incorporated into a final product.

83. Defendant's intent was to secure economic advantage in the marketplace against competitors.

84. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

85. Plaintiff incorporates by references all preceding paragraphs.

86. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;
3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, GBL and other statutory claims;
4. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and
5. Such other and further relief as the Court deems just and proper.

Dated: April 17, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com
Joshua Levin-Epstein

1:19-cv-02249
United States District Court
Eastern District of New York

Charles Harris individually and on behalf of all others similarly situated

Plaintiff

- against -

Mondelēz Global LLC

Defendant

Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: April 17, 2019

/s/ Spencer Sheehan
Spencer Sheehan